UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS E. RUFFIN,

                           Petitioner,

        v.

JEFFREY A. UTTECHT,

                           Respondent.

Case No. C19-1575-RAJ-MAT

REPORT AND RECOMMENDATION

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

Petitioner Marcus Ruffin is a state prisoner who is currently confined at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking to challenge his 2014 King County Superior Court judgment and sentence. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. Petitioner has not filed a response to respondent's answer. This Court, having reviewed the petition, respondent's answer, and the balance of the record, concludes that petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

///

REPORT AND RECOMMENDATION
PAGE - 1

## FACTUAL BACKGROUND

On July 8, 2014, petitioner was convicted, following a jury trial, on charges of first-degree murder, second-degree assault, and first-degree unlawful possession of a firearm.  (*See* Dkt. 16, Ex. 1 at 1.)  The jury also returned special verdicts with respect to the murder and assault counts finding that petitioner was armed with a firearm during the commission of those offenses.  (*Id.*, Ex. 1 at 2.)  Petitioner was sentenced on September 19, 2014 to a total term of 575.5 months confinement.  (*Id.*, Ex. 1 at 4.)

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's convictions as follows:

> The State alleged that Marcus Ruffin and Jacob Mommer robbed or attempted to rob two victims, assaulting one and murdering the other during the course of the robbery.  The state tried them separately, trying Mommer first.  The jury found Mommer guilty.
>
> After Mommer's conviction, detectives interviewed him.  He admitted to being with Ruffin and conspiring to rob one of the victims.  Mommer also stated that Ruffin admitted to shooting both victims.  Mommer entered into an agreement with the State to testify in this case in exchange for the State's recommendation for leniency in sentencing in his case.
>
> Mommer testified at Ruffin's trial.  The jury found Ruffin guilty and also determined the special firearm allegations were proven.  The court entered its judgment and sentence on the jury verdicts.

(*Id.*, Ex. 22 at 2.)

## PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals, and the Court of Appeals issued an unpublished opinion affirming the convictions on March 28, 2016.  (*See id.*, Exs. 18-22.)  Petitioner thereafter sought review by the Washington Supreme Court.  (*Id.*, Ex. 23.)  Petitioner presented the following issues to the Supreme Court for review:

REPORT AND RECOMMENDATION
PAGE - 2

1.    Does the jury instruction defining reasonable doubt as "one for which a reason exists" misdescribe the burden of proof, undermine the presumption of innocence, and shift the burden to the accused to provide a reason for why reasonable doubt exists?

2.    Did prosecutorial misconduct deprive Ruffin of his right to a fair trial where the prosecutor encouraged the jury to decide the case based on facts not in evidence, invaded the province of the jury and impermissibly vouched for the credibility of Jacob Mommer, the state's key witness against petitioner?

3.    Was Ruffin deprived of his right to present a defense where the court precluded him from presenting evidence to rebut the state's claim of recent fabrication as to his alibi defense?

(*Id.*, Ex. 23 at 1.)  The Supreme Court denied review without comment on August 31, 2016, and the Court of Appeals issued a mandate terminating direct review on September 9, 2016.  (*Id.*, Exs. 24, 25.)

On June 23, 2017, petitioner filed a personal restraint petition in the Washington Court of Appeals.  (*Id.*, Ex. 26; *see also* Exs. 27, 28.)  Petitioner identified a single claim in his petition; *i.e.*, that the forensic analysis of Mommer's cell phone data by law enforcement was unlawful and the evidence obtained through that unlawful search should have been suppressed at petitioner's trial.  (*Id.*, Ex. 26.)  On June 18, 2018, the acting chief judge of the Court of Appeals issued an order dismissing the petition, concluding that petitioner had not demonstrated Mommer's cell phones were unlawfully searched or that he had standing to challenge the search of Mommer's property.  (*Id.*, Ex. 29.)

Petitioner thereafter sought review of the chief judge's decision in the Washington Supreme Court.  (*Id.*, Ex. 32.)  On January 2, 2019, the commissioner of the Supreme Court denied petitioner's request for discretionary review, concurring with the chief judge that petitioner had not provided any facts or evidence showing that the search of the phones was unlawful, nor had he demonstrated that he had standing to challenge the search.  (*Id.*, Ex. 33.)  The Court of Appeals

REPORT AND RECOMMENDATION
PAGE - 3

issued a certificate of finality in petitioner's personal restraint proceedings on June 28, 2019.  (*Id.*, Ex. 39.)  Petitioner now seeks federal habeas review of his convictions.

GROUNDS FOR RELIEF

Petitioner identifies four grounds for relief in his federal habeas petition which respondent accurately summarizes as follows:

1.    The trial court's reasonable-doubt jury instruction was unconstitutional because it redefined a reasonable doubt as "one for which a reason exists."

2.    The prosecutor committed misconduct by (1) vouching for the credibility of Jacob Mommer by eliciting his agreement to testify "truthfully" and (2) invading the province of the jury by asking Mommer whether he had been convicted as an accomplice.

3.    The trial court denied Ruffin the right to present a defense by refusing to allow the defense to present evidence rebutting the State's claim of recent fabrication regarding Ruffin's alibi defense.

4.    Evidence admitted at Ruffin's trial was obtained from an unlawful forensic search of Jacob Mommer's cellphones, in violation of the Fourth Amendment.

(Dkt. 15 at 5 (citing Dkt. 12 at 5-10).)[1]

DISCUSSION

Respondent concedes that petitioner properly exhausted his state court remedies with respect to each of his grounds for federal habeas relief by properly presenting the claims to the Washington Supreme Court on direct appeal and in his personal restraint proceedings.  (*See* Dkt. 15 at 6.)  Respondent argues, however, that petitioner is not entitled to relief with respect to any of his asserted claims.  (*See id.* at 10-37.)

---

[1]  Petitioner asserts very few specific facts in support of his claims in his petition and the Court therefore presumes petitioner intends to assert in this federal habeas proceeding the same claims he presented to the state courts. Respondent's summary of petitioner's claims captures the essence of the claims as they were presented in petitioner's state court proceedings.

REPORT AND RECOMMENDATION
PAGE - 4

1

Standard of Review

2      Federal habeas corpus relief is available only to a person "in custody in violation of the

3  Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

4  petition may be granted with respect to any claim adjudicated on the merits in state court only if

5  the state court's decision was contrary to, or involved an unreasonable application of, clearly

6  established federal law, as determined by the Supreme Court, or if the decision was based on an

7  unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

8      Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

9  court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

10 or if the state court decides a case differently than the Supreme Court has on a set of materially

11 indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

12 "unreasonable application" clause, a federal habeas court may grant the writ only if the state court

13 identifies the correct governing legal principle from the Supreme Court's decisions, but

14 unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

15     The Supreme Court has made clear that a state court's decision may be overturned only if

16 the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

17 Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

18 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

19 the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v.*

20 *Alvarado*, 541 U.S. 652, 664 (2004)).

21     Clearly established federal law means "the governing legal principle or principles set forth

22 by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-

23 72. "If no Supreme Court precedent creates clearly established federal law relating to the legal

REPORT AND RECOMMENDATION
PAGE - 5

1   issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

2   an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955

3   (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

4          In considering a habeas petition, this Court's review "is limited to the record that was

5   before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170,

6   181-82 (2011).  If a habeas petitioner challenges the determination of a factual issue by a state

7   court, such determination shall be presumed correct, and the applicant has the burden of rebutting

8   the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

9                          Ground One:  Reasonable Doubt Instruction

10         Petitioner asserts in his first ground for relief that the trial court's reasonable doubt

11  instruction was constitutionally deficient and that his conviction therefore violates the Fourteenth

12  Amendment.  (Dkt. 12 at 5.)  The jury in petitioner's case was given the standard WPIC 4.01

13  "reasonable doubt" instruction, and that instruction reads as follows:

14         The defendant has entered a plea of not guilty.  That plea puts in issue every
           element of each crime charged.  The State is the plaintiff and has the burden of

15         proving each element of each crime beyond a reasonable doubt. The defendant has
           no burden of proving that a reasonable doubt exists as to these elements.

16

17         A defendant is presumed innocent.  This presumption continues throughout
           the entire trial unless during your deliberations you find it has been overcome by
           the evidence beyond a reasonable doubt.

18

19         *A reasonable doubt is one for which a reason exists and may arise from the
           evidence or lack of evidence.*  It is such a doubt as would exist in the mind of a

20         reasonable person after fully, fairly, and carefully considering all of the evidence
           or lack of evidence.  If, from such consideration, you have an abiding belief in the
           truth of the charge, you are satisfied beyond a reasonable doubt.

21

22  (Dkt. 16, Ex. 17 at 6 (Instruction No. 2 (emphasis added)).)

23         Petitioner did not object to the instruction at trial but argued on appeal that the instruction

REPORT AND RECOMMENDATION
PAGE - 6

1  was unconstitutional because it instructed jurors they must be able to articulate a reason for having

2  a reasonable doubt. (Dkt. 16, Ex. 18 at 32.) Focusing on the language highlighted above, petitioner

3  argued that "[i]n contrast to 'reason,' which refers to a doubt based in reason or logic, 'a reason'

4  requires reasonable doubt to be capable of explanation or justification. In other words, WPIC 4.01

5  requires not just a reasonable doubt, but also an explainable, articulable doubt." (*Id.*, Ex. 18 at

6  34.) Petitioner argued that this articulation requirement eased the prosecution's burden of proof

7  and impermissibly undermined the presumption of innocence. (*Id.*, Ex. 18 at 36-40.)

8      In a criminal prosecution, the state must prove beyond a reasonable doubt every element

9  of a charged offense. *In re Winship*, 397 U.S. 358 (1970). "The beyond a reasonable doubt

10  standard is a requirement of due process, but the Constitution neither prohibits trial courts from

11  defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*,

12  511 U.S. 1, 5 (1994). In *Victor*, the Supreme Court explained that "so long as the court instructs

13  the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt . . . the

14  Constitution does not require that any particular form of words be used in advising the jury of the

15  government's burden of proof. Rather, taken as a whole, the instructions must correctly convey

16  the concept of reasonable doubt to the jury." *Id.* (internal quotations and citations omitted). In

17  reviewing the constitutionality of a reasonable doubt instruction, the proper inquiry is "whether

18  there is a reasonable likelihood that the jury understood the instructions to allow conviction based

19  on proof insufficient to meet the *Winship* standard." *Id.* at 6.

20      The Washington Court of Appeals rejected petitioner's challenge to the reasonable doubt

21  instruction, concluding that the Washington Supreme Court's decision in *State v. Bennett*, 161

22  Wn.2d 303 (2007), controlled the outcome of the claim in petitioner's case. (Dkt. 16, Ex. 22 at 3.)

23  In *Bennett*, the Supreme Court noted that it had previously approved WPIC 4.01 and determined

REPORT AND RECOMMENDATION
PAGE - 7

1    that the instruction "adequately permits both the government and the accused to argue their

2    theories of the case." *Id*. at 317.  The *Bennett* court went on to state that "sound judicial practice

3    requires that this instruction be given until a better instruction is approved," and it instructed trial

4    courts "to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove

5    every element of the charged crime beyond a reasonable doubt." *Id*. at 317-18.

6          After noting its reliance on *Bennett*, the Court of Appeals in petitioner's case concluded

7    that the trial court did not err in giving the WPIC 4.01 "reasonable doubt" jury instruction because

8    it "provided the instruction as directed by the supreme court." (Dkt. 16, Ex. 22 at 3-4.)  The court

9    went on to advise that petitioner's arguments would be "better directed to the supreme court, which

10   directed trial courts to use WPIC 4.01, as the trial court did in this case." (*See id*.)

11          This Court discerns nothing in the language of the challenged instruction which raised the

12   degree of doubt required for acquittal and there appears no reasonable likelihood that the jury

13   understood the instruction to allow conviction based on proof insufficient to meet the *Winship*

14   standard.  The Court of Appeals reasonably rejected petitioner's challenge to the reasonable doubt

15   instruction and petitioner's federal habeas petition should therefore be denied with respect to his

16   first ground for relief.

17                                 Ground Two:  Prosecutorial Misconduct

18          Petitioner asserts in his second ground for relief that prosecutorial misconduct deprived

19   him of his right to a fair trial. (Dkt. 12 at 7.)  Petitioner identified two bases for his prosecutorial

20   misconduct claim in his briefing on appeal.  Petitioner argued that the prosecutor impermissibly

21   vouched for Jacob Mommer when she elicited testimony from him that he agreed to testify

22   "truthfully" at petitioner's trial. (Dkt. 16, Ex. 18 at 43.)  Petitioner also argued that the prosecutor

23   invaded the province of the jury to determine the facts, and impermissibly vouched for Mommer,

REPORT AND RECOMMENDATION
PAGE - 8

when she elicited testimony from him that he was convicted as an accomplice of the same crimes with which petitioner had been charged.  (*Id.*, Ex. 18 at 41-43.)

When a prosecutor's conduct is placed in question, unless the conduct impermissibly infringes on a specific constitutional right, the standard of review is the "narrow one of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).  To obtain relief on a claim of prosecutorial misconduct, a federal habeas petitioner must do more than show that "the prosecutor's remarks were undesirable or even universally condemned."  *Darden*, 477 U.S. at 180-81.  A petitioner must demonstrate that the allegedly improper comments made by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).  In order to assess a claim that a prosecutor's questions rendered a trial so fundamentally unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and place the prosecutor's remarks in context.  *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

Prosecutorial misconduct which rises to the level of a constitutional violation nonetheless provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht*.  *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).  Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

    *1.    Vouching*

Petitioner claims that it was misconduct for the prosecutor to elicit from Jacob Mommer during the state's case-in-chief Mommer's agreement to testify truthfully at petitioner's trial.  Prior

REPORT AND RECOMMENDATION
PAGE - 9

to petitioner being charged with the crimes of which he was ultimately convicted, Mommer was convicted of those same crimes.  Shortly after Mommer was convicted, but before he was sentenced, he requested a meeting with the prosecutor, apparently indicating he had information he wanted to share about the involvement of another individual in the crimes.  (*See* Dkt. 16, Ex. 2.)  Mommer met with the prosecutor in his case and described petitioner's involvement in the crimes, identifying him as the shooter.  (*Id.*)  Approximately three months later, Mommer met with the prosecutor again at which time he entered into a written agreement with the prosecution to provide information in exchange for leniency at the time of his sentencing.  (*See id.*, Ex. 3 at 4-5.) A part of the agreement was that Mommer testify truthfully at the trial of anyone who may be charged based on the information he provided.  (*Id.*, Ex. 3 at 6.)  Petitioner was subsequently charged and Mommer testified at petitioner's trial pursuant to his agreement.

On direct examination, as the prosecutor questioned Mommer about his agreement, the following exchange occurred:

[State:]        In this meeting on August 13, did you all talk about the agreement?

[Mommer:]    Yeah.

[State:]        Was there also a written agreement?

[Mommer:]    Yeah.

[State:]        Did you sign it?

[Mommer:]    Yeah.

[State:]        Do you remember what the terms were?

Don't tell me what they are. But do you remember the terms of your agreement with the prosecutor?

[Mommer:]    Yeah.

REPORT AND RECOMMENDATION
PAGE - 10

| | | |
|---|---|---|
| [State:] | And did you go over them on this interview on August 13th? |
| [Mommer:] | Yeah. |
| [State:] | And your lawyer was there at that time, too? |
| [Mommer:] | Yeah. |
| [State:] | Was part of the agreement that you agreed to come and testify at trial? |
| [Mommer:] | Yeah, truthfully. |

(*Id*., Ex. 9 at 187.)  Defense counsel did not object to the questions about the agreement nor did he move to strike petitioner's response to the final question.  Petitioner contends that the prosecutor, in eliciting testimony that Mommer had agreed to testify truthfully, impermissibly vouched for Mommer.

Improper vouching typically occurs when:  (1) the prosecutor places the prestige of the government behind a witness by expressing his personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports a witness's testimony.  *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002) (citing *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998)).  Improper vouching also occurs when a prosecutor implicitly vouches for a witness's credibility.  *Id*.  (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985)).

The Washington Court of Appeals rejected petitioner's claim that the conduct by the prosecutor in relation to Mommer's agreement to testify truthfully amounted to impermissible vouching.  The court first noted that there was no motion to strike the answer or request a curative instruction, and went on to explain that "In our view, if the court had been asked to give a proper curative instruction, it would have cured a problem by directing the jury to disregard the part of

the answer that refers to 'truthfully.'" (Dkt. 16, Ex. 22 at 9.)  The court went on to observe that the prosecutor did not ask Mommer whether he was required to testify truthfully, the witness volunteered the information in response to another question.  (*Id*.)  Finally, the court concluded that "this momentary exchange between the prosecutor and Mommer was not misconduct," and that "there simply is no showing that it had a substantial likelihood of affecting the jury verdict." (*Id*.)

Petitioner makes no showing that the state court's rejection of his challenge to the prosecutor's conduct as it relates to the agreement to testify truthfully was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent.  The record confirms that the prosecutor did not ask Mommer whether he was required to testify truthfully, Mommer volunteered the information.  This cannot be deemed misconduct on the part of the prosecutor.  Moreover, the transcript of petitioner's trial reveals that petitioner's counsel asked that the videos of Mommer's interviews with the prosecutor be shown to the jury even though the prosecutor had not intended to offer them as evidence.  (*See id*., Ex. 10 at 4-7.)  Those interviews make clear that part of Mommer's agreement with the state was that he testify truthfully.  (*See id*., Ex. 3 at 4-8.)  Given the other evidence in the record, the fact that Mommer offered this unsolicited testimony at trial cannot reasonably be deemed to have prejudiced petitioner.  Petitioner is therefore not entitled to relief with respect to this part of his prosecutorial misconduct claim.

### 2.    *Accomplice Liability*

Petitioner also claims that it was misconduct for the prosecutor to elicit testimony from Mommer that he had been convicted as an accomplice.  The Court of Appeals rejected this portion of petitioner's prosecutorial misconduct claim as well, concluding that the prosecutor's question was improper but did not result in any prejudice to petitioner.  The court explained its conclusion

REPORT AND RECOMMENDATION
PAGE - 12

as follows:

Ruffin also argues that the State committed misconduct by asking Mommer whether he had been convicted as an accomplice. Ruffin claims this was based on "unsubstantiated speculation," invaded the province of the jury, and vouched for Mommer. Although the question was improper, it did not have a substantial likelihood of affecting the jury verdict.

At trial, the State asked Mommer about the prior criminal case in which he had been convicted of murder. This exchange between the prosecutor and Mommer followed:

[State:] And were you convicted of being an accomplice to murder in the first degree and assault in the second degree?

[Mommer:] Yes.

[State:] Do you know what an accomplice is?

[Mommer:] Yes.

[State:] What is it?

[Defense counsel:] Objection.

[Mommer:] Somebody that aids somebody.

[Defense counsel:] I have an objection.

[Court:] Basis?

[Defense counsel:] Legal conclusion. It is not relevant.

[Court:] Objection is overruled. You may answer.

[Mommer:] I was convicted of it as being an accomplice, somebody that aids somebody in a crime.

Ruffin argues this was misconduct because it was "not possible to determine whether Mommer's jury convicted him as an accomplice or principal." Neither verdict found Mommer specifically guilty as an accomplice or principal.

We note that there was no objection to the initial question and that the objection, when made, was based on the assertion that the witness was being asked to give a legal conclusion. The claim on appeal is made on different bases: invading

REPORT AND RECOMMENDATION
PAGE - 13

1    the province of the jury and vouching.

2        Nevertheless, the issue is whether that question was improper.  We hold that
3    it was.  Mommer presumably knew of the State's theory of the case in the prior
     trial.  But there was no way for him to know the basis on which he was convicted
4    by the jury.  He was not on that jury, and there is nothing in that jury's verdict that
     would tell outsiders whether he was convicted as an accomplice.  The question was
5    improper.

6        But the real issue before us is whether this improper question had a
     substantial likelihood of affecting the jury's verdict.  We think not.

7        During closing, the prosecutor did not argue that Mommer was convicted
8    as an accomplice.  The argument was limited to describing his "participat[ion] in a
     robbery that resulted in the death of [one victim] and the injuries to [the other
9    victim].  And we are unpersuaded that the brief exchange during examination had
     a substantial likelihood of affecting the jury verdict, particularly in light of the other
     evidence before the jury.

10

11   (*Id*., Ex. 22 at 9-11 (citations omitted).)

12        Once again, petitioner makes no showing that the Court of Appeals' decision was contrary

13   to, or constituted an unreasonable application of, United States Supreme Court precedent.  Even

14   assuming the prosecutor's question was improper, absolutely nothing in the record demonstrates

15   that petitioner was prejudiced by the question.  Mommer testified that he was in the back seat of

16   the victims' car when the shooter appeared at the window demanding money, and this was

17   confirmed by Jason Rose, one of the victims who also testified at petitioner's trial and made clear

18   that Mommer was not the shooter.  (*See id*., Ex. 6 at 125-33 and Ex. 9 at 145-49.)  Given this

19   testimony, which effectively confirmed that Mommer aided the shooter, and the additional

20   evidence connecting petitioner to the crimes, the prosecutor's conduct in eliciting testimony from

21   Mommer that he was convicted as an accomplice could not reasonably be deemed to have

22   prejudiced petitioner.  Thus, petitioner is not entitled to relief with respect to this part of his

23   prosecutorial misconduct claim either.

REPORT AND RECOMMENDATION
PAGE - 14

For the reasons set forth above, petitioner's federal habeas petition should be denied with respect to the entirety of his second ground for relief.

Ground Three:  Right to Present a Defense

Petitioner asserts in his third ground for relief that the trial court denied him his right to present a defense when it excluded testimony pertaining to out-of-court conversations petitioner had with his attorney about an alibi defense.  (*See* Dkt. 12 at 8; Dkt. 12-1 at 11.)  Petitioner's decision to present an alibi defense came very late in his trial, with defense counsel notifying the prosecutor just shortly before the prosecution was intending to rest its case that he would be presenting an alibi witness who would testify petitioner was with her on the day the charged crimes were committed.  (*See* Dkt. 16, Ex. 12 at 4-5, 10.)  This notification came well after the defense was required by state rules of criminal procedure to have disclosed its intent to raise an alibi defense.  (*See id*., Ex. 12 at 15.)  Petitioner was nonetheless permitted to present the testimony of his alibi witness and girlfriend, Monica King.  (*See id*., Ex. 14 at 27-80.)  Petitioner also testified in his own defense.  (*See id*., Ex. 14 at 103-132.)

King testified that on January 3, 2012, the date the charged crimes occurred, she was with petitioner in the afternoon and all through that night.[2]  (*Id*., Ex. 14 at 36-37.)  She also testified that it was not until a week prior to her appearance in court on July 2, 2014 that she told anyone she was with petitioner on the date of the charged crimes, and she acknowledged that she made this disclosure to petitioner's defense counsel shortly after she visited petitioner in jail.  (*Id*., Ex. 14 at 42, 47-50.)  King acknowledged as well that petitioner had previously asked her to take the rap for a drug charge he had pending against him and that she had agreed to do.  (*See id*., Ex. 14

---

[2]  The shooting occurred just before 10:00 p.m. on January 3, 2012.  (*See* Dkt. 16, Ex. 6 at 10.)

REPORT AND RECOMMENDATION
PAGE - 15

at 51-55.)

Petitioner during his testimony, confirmed on cross-examination that he had previously asked King to take the drug charge for him and he also confirmed that it wasn't until approximately six days before King's testimony that he discussed with her the possibility of her speaking with his defense counsel about a possible alibi for him.  (*See id*., Ex. 14 at 124-129.)  On re-direct examination, defense counsel asked petitioner about their earliest meetings and whether he remembered counsel telling him about the possible defenses that were available.  (*Id*., Ex. 14 at 131.)  After petitioner responded affirmatively, counsel attempted to inquire about the details of their discussion, asking in particular whether he had mentioned alibi as a defense that was available.  (*Id*., Ex. 14 at 132.)  The prosecutor interposed a hearsay objection which was sustained.  (*Id*.)  It is this proposed testimony regarding petitioner's out-of-court discussions with his attorney which is the basis of the instant claim.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations omitted).  However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions" such as evidentiary and procedural rules.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  A criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  The Supreme Court has explained that "the Constitution permits judges to exclude evidence that is repetitive …, only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues."

REPORT AND RECOMMENDATION
PAGE - 16

1    *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (internal quotations omitted).

2    Petitioner argued on direct appeal that he was denied his right to present a defense when

3    the trial court precluded him from presenting evidence to rebut the state's claim of recent

4    fabrication as to his alibi defense.  (*See* Dkt. 16, Ex. 18 at 50-61.)  The Washington Court of

5    Appeals rejected this argument on direct appeal, explaining its conclusion as follows:

6            Criminal defendants have a constitutional right to present a defense under
the Sixth Amendment of the United States Constitution and article 1, section 22 of
7    Washington's constitution.  But this right is not absolute, and the evidence "a
defendant seeks to introduce 'must be of at least minimal relevance.'"  "'The
8    accused does not have an unfettered right to offer [evidence] that is incompetent,
privileged, or otherwise inadmissible under standard rules of evidence.'"

9            "'All relevant evidence is admissible' unless it is limited by the constitution,
10   the rules of evidence, or other applicable rules."  Evidence is relevant if it has "any
tendency to make the existence of any fact that is of consequence to the
11   determination of the action more probable or less probable than it would be without
the evidence."  But "[r]elevant testimony may be excluded from trial if it is
12   hearsay."

13           Under ER 801(d)(1)(ii), prior consistent statements are not hearsay.  The
rule specifically provides that the statement is not hearsay if the declarant testifies
14   at the trial and is subject to cross examination concerning the statement.
Additionally, the statement must be "consistent with the declarant's testimony
15   and . . . offered to rebut an express or implied charge against the declarant of recent
fabrication or improper influence or motive."  "Recent fabrication is inferred when
16   counsel's examination 'raise[s] an inference sufficient to allow counsel to argue the
witness had a reason to fabricate her story later.'"

17           As a threshold matter, the trial court must decide "'whether the [declarant's]
18   proffered motive to lie rises to the level necessary to exclude the prior consistent
statement.'"  Specifically, a charge of recent fabrication can be rebutted by prior
19   consistent statements only if those statements were made when "'the witness was
unlikely to have foreseen the legal consequences of his or her statements.'"

20           "[R]elevant evidence 'may be excluded if its probative value is substantially
21   outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, waste of time, or needless
22   presentation of cumulative evidence.'"

23           . . . .

REPORT AND RECOMMENDATION
PAGE - 17

At trial, Ruffin's girlfriend, Monica King, testified to Ruffin's alibi—his claim that he was with her at the time of the shooting. When asked why she did not earlier tell anyone about Ruffin's alibi, she stated that Ruffin did not initially want her to get involved.

Ruffin also testified. Among the matters covered was his claimed change of mind about asking King to testify not long before trial. On re-direct, Ruffin's attorney asked Ruffin about their first meeting to discuss the charges. Counsel asked "Did I mention alibi as a defense that was available to you?" The State objected, arguing it called for hearsay. Counsel argued that ER 801(d)(1)(ii) applied.

Outside the jury's presence, the court permitted counsel to argue further their respective positions. The court sustained the objection at the conclusion of the respective arguments.

The court did so on several bases. The court first stated that it had in mind Ruffin's right to present evidence in his defense, particularly in a murder trial. The court then focused on whether Ruffin's statements to his counsel would be classified as a non hearsay statement under ER 801(d)(1)(ii): a prior consistent statement. The court concluded that Ruffin's statements to his counsel about legal strategy (in this case, alibi) did "not have the hallmark of reliability" that underlies the analysis.

Additionally, the court considered ER 403, finding the need for this particular testimony "to be minimal in light of Ms. King's testimony that previously Mr. Ruffin had told her and communicated to her that he did not want her . . . to get involved . . . ."

The court also expressed "[a]dditonal [sic] 403 concerns," including "confusion of the issues and waste of time," stating

> This, if continued, would in all likelihood require substitution of counsel, would require Mr. Peale to testify. . . . The question of attorney's credibility [and] the escape of the waiver of the attorney-client privilege, are all matters that further make this Court conclude that the objection ought be sustained.

For all these reasons, the court's ruling excluding the offered evidence was proper.

Here, the court considered Ruffin's constitutional right to present a defense. But this constitutional right does not, in this case, override the evidentiary issues on which the court based its rulings.

REPORT AND RECOMMENDATION
PAGE - 18

1

2          Ruffin argues that the trial court can consider whether the witness made the
   prior consistent statement when he or she had no motive to lie. He argues that
3   consideration of this factor weighs in his favor because he was speaking
   confidentially to his defense attorney.

4          But even if we were to agree that Ruffin had no motive to lie when speaking
   with his counsel about his alibi, that would not necessitate admission of the
5   statement. Even admissible evidence may be excluded for other reasons.

6          For example, the court also based its decision on ER 403. That rule permits
   the exclusion of otherwise admissible evidence for specified reasons. Here, the
7   court properly concluded that confusion of the issues and waste of time
   substantially outweighed the admissibility of the evidence. Given the
8   circumstances cited by the court, its weighing of competing factors was correct.

9          Ruffin relies on ER 403, arguing that evidence of his alibi discussion with
   his attorney was relevant to his defense and to rebut the state's allegation of recent
10   fabrication. He further argues that the State did not establish that admitting the
   evidence was prejudicial.

11
          These arguments do not detract from the trial court's correct weighing of
12   relevant factors that prompted it to exclude the offered evidence. There was no
   error.

13

14   (*Id.*, Ex. 22 at 11-16 (citations omitted).)

15      Petitioner makes no showing that the state court's decision with respect to his claim that

16   he was denied his right to present a defense was contrary to, or constituted an unreasonable

17   application of, United States Supreme Court precedent. The record makes clear that the evidence

18   which petitioner sought to admit was deemed inadmissible based upon legitimate evidentiary

19   concerns and, thus, petitioner suffered no violation of his right to present a defense. Accordingly,

20   petitioner's federal habeas petition should be denied with respect to his third ground for relief.

21                              Ground Four: Unlawful Search

22      Petitioner asserts in his fourth ground for relief that his Fourth Amendment rights were

23   violated when forensic data unlawfully seized from Jacob Mommer's cell phones was admitted at

REPORT AND RECOMMENDATION
PAGE - 19

petitioner's trial.  (*See* Dkt. 12 at 10.)  Respondent argues that petitioner's Fourth Amendment claim is barred under the *Stone v. Powell* doctrine.  (Dkt. 15 at 34-35.)

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that federal habeas review of a Fourth Amendment claim is barred unless the petitioner can show that he was "denied an opportunity for full and fair litigation of that claim at trial and on direct review."  *Id*. at 494 n.37.  The Court reasoned that because Fourth Amendment claims turn on police misconduct and not on actual guilt or innocence, they have "no bearing on the basic justice of [one's] incarceration."  *Id*. at 491-92 n.31.  The Ninth Circuit has made clear that when considering the cognizability of a Fourth Amendment claim on federal habeas review,  "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  *See also Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994).

It appears from petitioner's submissions in his state court proceedings that petitioner's counsel made a request to suppress the cell phone records at issue here during a pretrial CrR 3.5 hearing.  (*See* Dkt. 16, Ex. 19 at 1 and Ex. 26 at 1.)  The defense apparently did not seek to challenge the admissibility of the evidence under Washington Superior Court Criminal Rule (CrR) 3.6, a process through which criminal defendants may seek to suppress unlawfully obtained evidence, though nothing in the record suggests the defense was precluded from doing so.  (*See* Dkt. 15 at 36.)  Petitioner raised his Fourth Amendment claim for the first time in his statement of additional grounds on direct appeal, but the Court of Appeals rejected the claim because the record was inadequate to review it.  (*See* Dkt. 16, Ex. 19 and Ex. 22 at 16.)  The court explained that it could not determine the constitutionality of the forensic analysis conducted on Mommer's cell phones because the warrants were not part of the trial record and the record was silent on the scope

REPORT AND RECOMMENDATION
PAGE - 20

of the warrants.  (*Id.*, Ex. 22 at 16-17.)

Petitioner also pursued his unlawful search claim in the Washington appellate courts on post-conviction review.  (*See id.*, Ex. 26.)  However, the state courts again rejected the claim because petitioner failed to provide any facts or evidence showing the search of Mommer's phones was unlawful, and he failed to show he had a personal privacy interest in Mommer's phones giving him standing to challenge the search.  (*See id.*, Ex. 29 at 2-3 and Ex. 33 at 2.)  Because petitioner had an opportunity to litigate his Fourth Amendment claim in the state courts, his unlawful search claim is not cognizable in this federal habeas action.  Petitioner's federal habeas petition should therefore be denied with respect to his fourth ground for relief.

### Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

### CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice.  This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this

REPORT AND RECOMMENDATION
PAGE - 21

Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 19, 2020**.

DATED this 26th day of May, 2020.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 22